AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States District Court
Southern District of Texas
FILED
OCT 08 2019
David J. Bradley, Clerk

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Sunil WADHWANI | ) | Case No. M-19-2436-M |
| | ) | |
| | ) | |
| | ) | SEALED |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of April 25, 2013 through Nov. 3, 2014 in the county of Hidalgo in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1343, 1346, 1349 | Conspiracy to Commit Honest Services Wire Fraud |

This criminal complaint is based on these facts:
See Attachment A

☑ Continued on the attached sheet.

Approved by
[signature]

Sworn to before me and signed in my presence.

Date: 10/08/2019 – 4:39 p.m.

City and state: McAllen, Texas

[signature]
Complainant's signature
Jason Malkiewicz, FBI Special Agent
Printed name and title

[signature]
Judge's signature
Juan F. Alanis – U.S. Magistrate Judge
Printed name and title

**Attachment A**

1. I, Jason Malkiewicz, am a Special Agent of the Federal Bureau of Investigation (FBI) and have knowledge of the following facts. The facts in this affidavit are based on the investigation to date, including interviews conducted by the FBI and other law enforcement agencies, review of agendas, minutes, and other documents from the City of Weslaco and the Economic Development Corporation of Weslaco ("The Corporation"), bank and financial records and other documents obtained by the FBI. The facts related in this affidavit do not reflect the totality of information known to me or other agents or officers, but rather merely the amount needed to establish probable cause. I do not rely upon facts not set forth herein in reaching my conclusion that a complaint should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this attachment in support of the complaint.

2. I make this affidavit in support of criminal complaints charging Sunil Wadhwani ("Defendant") with conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349.

The Corporation

3. The Corporation is a non-profit corporation specifically governed by the Texas Development Corporation Act. The purpose of the Corporation is to promote, assist, and enhance economic and industrial development in accordance with the Articles of Incorporation.

4. The business and affairs of the Corporation and all corporate powers shall be exercised by or under authority of the Board of Directors (the "Board"), appointed by the governing body of the City of Weslaco in the manner provided in Article VI of the Articles of Incorporation.

5. In approximately February of 2013, four members of the Corporation were removed and replaced by Weslaco City Commissioners, including Commissioner A.

<u>Motel 6 Project</u>

6. On April 25, 2013, an associate of the Defendant ("Person A") exchanged e-mails with Person B, a person under indictment for another bribery scheme occurring with other Weslaco City Commissioners, regarding a proposed letter to be sent to the Corporation expressing Defendant's intent to build and operate a Motel 6 in Weslaco, Texas.

7. On or about April 25, 2013, Defendant submitted an incentive application to the Corporation. The Corporation Executive Director's preliminary recommendation was to provide a $300,000 incentive payment based on a documented total project expenditure of $3,000,000 to include soft and hard cost for the development plus land cost.

8. In May of 2013, Defendant obtained a letter of commitment from a bank approving a $2,830,500 loan for the construction of a Motel 6 in Weslaco, Texas that was contingent upon the borrower providing proof of $150,000 in funding from the City of Weslaco prior to closing. The $150,000 in funds were to be used to bring utility infrastructure to the site, and complete all zoning and subdivision requirements, prior to the advancement of any bank funds.

9. On May 2, 2013, Person A e-mailed the Corporation Executive Director the letter of intent to build a Motel 6 in Weslaco, Texas that was previously exchanged with Person B and discussed in paragraph 6.

10. On May 8, 2013, Defendant and others representing themselves as Sarina Group, Ltd. ("Sarina Group") made a presentation regarding the Motel 6 project to the Corporation. Commissioner A and others subsequently moved to approve an incentive up to $300,000 to Sarina Group subject to approval by the Weslaco City Commission.

11. On May 15, 2013, Defendant was notified that the $300,000 incentive was approved to be paid as follows: $50,000 upon Certificate of Occupancy and five yearly payments of $50,000 on the anniversary date of Certificate of Occupancy.

2

12. Later that day, Person A e-mailed the Corporation Executive Director requesting half the funds be available at the beginning of the project and the remaining $150,000 by the end of the year.

13. On May 23, 2013, Person A e-mailed the Corporation Executive Director on behalf of Defendant requesting the 50% of the funds to be available when the project breaks ground.

14. On May 29, 2013, Defendant received a copy of a letter revising the incentive payments to the following: $25,000 upon approval of the underground plumbing inspection; $25,000 upon approval of the foundation inspection; $25,000 upon approval of the rough-in inspection; $25,000 upon approval of the ceiling inspection; $25,000 upon approval of the fire cover-up inspection; $25,000 upon approval of the final inspection; $75,000 upon receipt of the Certificate of Occupancy and open for business; $75,000 upon the first anniversary of business opening. The revisions would remain subject to approval by the Weslaco City Commission.

15. On June 4, 2013, at a regular meeting of the Weslaco City Commission, the Commission moved to authorize a development agreement between the Corporation and Sarina Group that provided an incentive over $100,000. The motion carried unanimously.

16. On June 28, 2013, the Executive Director of the Corporation was removed and replaced with an Interim Executive Director of the Corporation.

17. On or about July 30, 2013, Defendant was provided a letter detailing another revision of the incentive payments to be paid as follows: $75,000 upon completion of the foundation; $75,000 upon completion of the third floor framing; $75,000 upon receipt of a copy of the Certificate of Occupancy; $75,000 on the first anniversary of the receipt of the Certificate of Occupancy.

3

18. On or about August 21, 2013, the Corporation authorized another revision of the incentive payout as follows: $150,000 upon pouring the concrete foundation; $150,000 upon the Corporation's receipt of a copy of the Certificate of Occupancy.

19. On September 30, 2013, the Interim Executive Director of the Corporation was removed and replaced with a second Interim Executive Director.

20. On October 4, 2013, Defendant was provided another revision of incentive payments detailing the payments to be $150,000 upon pouring the concrete foundation and $150,000 upon the Corporation's receipt of a copy of the Certificate of Occupancy, but no earlier than October 14, 2014.

21. On or about December 2, 2013, Defendant signed the development agreement with the Corporation on behalf of Nolana Self Storage, LLC d/b/a Motel 6. According to the executed Development Agreement, $150,000 was to be paid within 10 business days of the Corporation's receipt of certifications issued by the City of Weslaco relating to the approval of the underground plumbing inspection for the Motel 6, approval of the foundation of the Motel 6, and the Corporation's verification of the foundation's completion. Another $150,000 was to be paid within 10 business days of the Corporation's receipt of a copy of the Certificate of Occupancy for the Motel 6 issued by the City of Weslaco and the Corporation's verification that the Motel 6 has commenced operations. However, the Corporation would not be required to fund the second $150,000 prior to October 15, 2014.

22. On December 4, 2013, the Corporation, through its agents, signed the development agreement referenced in paragraph 21.

23. On December 23, 2013, Person A requested the release of the first $150,000 payment as per the development agreement, which the Corporation paid by check issued on December 31, 2013.

24. On December 27, 2013, after the development agreement, which included economic development incentives totaling $300,000, was signed, Person A sent Person B a purported consulting services agreement between Nolana Self Storage LLC and a consulting business owned by Person C with handwritten revisions.

25. According to the handwritten revisions contained on the document between Nolana Self Storage and Person C, the contract was for Person C to "assist in acquiring funds for the Project from the City of Weslaco" and "the Project consists of the construction of a Motel 6 in Weslaco, Texas." Under a section entitled "Description Of The Work," it states "The term 'work' of Consultant when mentioned in this Agreement means consulting services." Under a section entitled compensation, it discussed that payment should be one lump sum payment of $75,000. Based on prior versions of the document as well as the handwritten revisions, it can be seen that the $75,000 amount had been reduced from a prior $150,000 figure on the document.

26. On or about November 1, 2014, the Corporation wrote a check in the amount of $150,000 to Nolana Self Storage, LLC d/b/a Motel 6 as the second incentive payment. On or about November 3, 2014, said check was deposited into an Inter National Bank Account. Defendant and others are the authorized signers of said Inter National Bank Account. These deposits as well as several of the e-mails previously referenced occurred through interstate wire transmissions.

### The Bribe Payments and the Honest Services Wire Fraud Scheme

27. In order to effectuate or devise the approval of the development agreement, for the Motel 6 project, Defendant paid thousands of dollars in bribes to Person C and Commissioner A through Person B.

28. Additionally, according to Person C, in order to conceal the nature of the bribe payments, Defendant and others drafted a purported consulting agreement that would be entered into by Nolana Self Storage, LLC and Person C's consulting business as referenced in paragraphs 24 and 25. However, according to Person C, said document was not executed.

29. Between April 8, 2013 and May 31, 2013, Defendant contacted Person C by telephone approximately 7 times. Between March 1, 2013 and November 13, 2013, Defendant and Person A contacted Person B by telephone approximately 247 times. The telephone calls often coincided with the Corporation's meetings during which decisions were made regarding the incentive payments.

30. An individual who served as one of the Corporation's Executive Directors during the Motel 6 incentive agreement negotiations also recalled being visited by Commissioner A and the Defendant regarding said incentive agreement and felt pressured regarding the agreement. This individual also stated that it was unusual for the Corporation to approve the payout of the majority or entirety of incentive funds in the manner in which it was done within the finalized Motel 6 development agreement.

31. During an interview, Defendant admitted to meeting with Person B and Person C regarding the Motel 6 project. Defendant stated Person C had been recommended as a consultant. Defendant stated that he met with Person B on multiple other occasions and that Person B and Commissioner A helped him push his requests through the Corporation.