1            IN THE UNITED STATES DISTRICT COURT

2           FOR THE SOUTHERN DISTRICT OF TEXAS

3                    MCALLEN DIVISION

4  UNITED STATES OF AMERICA      §    CASE NO. 7:19-CR-01995-02
                                 §    MCALLEN, TEXAS
5  VERSUS                        §    FRIDAY,
                                 §    MAY 22, 2020
6  SUNIL WADHWANI                §    3:28 P.M. TO 4:22 P.M.

7
                          RE-ARRAIGNMENT
8
          BEFORE THE HONORABLE RICARDO H. HINOJOSA
9               UNITED STATES DISTRICT JUDGE

10

11

12      APPEARANCES:                    (SEE NEXT PAGE)

13      COURT RECORDER:            ANTONIO TIJERINA

14

15

16

17

18

19

20            TRANSCRIPTION SERVICE BY:

21      JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 Eldridge Road, #144
22               Sugar Land, TX 77478
                    281-277-5325
23           mary@judicialtranscribers.com

24
       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.

1                          APPEARANCES:

2

3   FOR THE GOVERNMENT:            US ATTORNEY'S OFFICE
                                   Robert Lopez, Jr., Esq.
4                                  1701 W. Highway 83
                                   Suite 600
5                                  McAllen, Texas   78501
                                   956-618-8010
6

7   FOR THE DEFENDANT:            GREGOR C. WYNNE, PLLC
                                  Michael John Wynne, Esq.
8                                 909 Fannin
                                  Suite 3800
9                                 Houston, Texas   77010
                                  713-331-2458
10
                                  ATTORNEY AT LAW
11                                Ricardo L. Salinas, Esq.
                                  2011 N. Conway Street
12                                Mission, Texas   78572
                                  956-584-3900
13
                                  ROERIG OLIVEIRA & FISHER
14                                David George Oliveira, Esq.
                                  10255 N. 10th Street
15                                McAllen, Texas   78504
                                  956-386-1625
16

17  ALSO ATTENDING:

18                                US PROBATION OFFICER
                                  Melinda Tobias
19

20

21

22

23

24

25

1          <u>MCALLEN, TEXAS; FRIDAY, MAY 22, 2020; 3:28 P.M.</u>

2          THE COURT:  Criminal No. M-19-1995-02,

3   United States of America versus Sunil Wadhwani.

4          MR. LOPEZ:  Good afternoon, Your Honor.

5          Bobby Lopez, on behalf of the Government, present

6   and ready.

7          MR. SALINAS:  Your Honor, Rick Salinas along with

8   Michael Wynne and David Oliveira, on behalf of Mr. Wadhwani.

9   He's present in the courtroom, ready to proceed.

10          THE COURT:  Mr. Wynne, do we still have the issue

11   of his -- the Motion that's been filed by the Government to

12   disqualify him?  Mr. Wynne has promised the Court several

13   times that he's going to file the Affidavits of the other

14   individuals that he has represented that might present a

15   potential conflict.  To this day, that has not happened so.

16          MR. LOPEZ:  Your Honor, if I may?  I've been in

17   discussions with Mr. Salinas about this and in regards to

18   the plea happening as well.  Once the plea happens,

19   Your Honor, I believe it moots most of the -- if not all of

20   the issues that are currently present within that Motion to

21   Disqualify.  The remaining other issues, Your Honor, I

22   believe have been resolved through the waivers that have

23   been filed.

24          THE COURT:  I know, but I haven't seen them.  And

25   I don't have a problem seeing them at some point.

1          MR. LOPEZ:  Yes, sir.

2          THE COURT:  And so we can either proceed with this

3    today or Mr. Wynne is going to -- Mr. Wadhwani is going to

4    proceed with Mr. Salinas and Mr. Oliveira as his lawyers for

5    purposes of this hearing today.

6          MR. LOPEZ:  And, Your Honor -- and if I may -- I

7    believe the waivers that I'm speaking of are the ones that

8    have already been filed by the Court.  I believe the only

9    one that we're awaiting on is on Mr. Garcia, which I believe

10   would moot the issue once the plea has been taken.

11         THE COURT:  Well, until I have that happen,

12   Mr. Wynne still has the issue in front of me that you

13   brought up to my attention.

14         MR. LOPEZ:  I agree, Your Honor.

15         THE COURT:  And we asked for, I think, several

16   waivers.

17         MR. LOPEZ:  I agree.

18         THE COURT:  Is Mr. Wadhwani willing to proceed in

19   that fashion?

20         MR. SALINAS:  Your Honor, I have discussed it with

21   Mr. Wadhwani and I will be, I guess, handling the plea for

22   today, Judge.

23         THE COURT:  You guess or are you going to?

24         MR. SALINAS:  No, I am, with your permission,

25   Judge.

1          THE COURT:  Yes, you and Mr. Oliveira and
2  Mr. Wynne until we end up having either no more conflict
3  after today or -- I really do need to see the waiver forms
4  also.
5          MR. SALINAS:  And, I'm sorry, did I --
6          THE COURT:  They can be filed under seal.  I just
7  need to see them.
8          MR. SALINAS:  And, I'm sorry, did I use the word
9  "guess"?  But I was asking for permission to be able to
10  proceed on behalf of Mr. Wadhwani.
11          THE COURT:  Well, nobody has questioned your
12  ability to go ahead and proceed here --
13          MR. LOPEZ:  And, Your Honor --
14          THE COURT:  -- nor Mr. Oliveira's.  Okay.
15          MR. LOPEZ:  Your Honor, I believe the other issue
16  that's there's been discussions with Mr. Salinas is in
17  regards to the other speedy trial Motions, Your Honor.
18  Those will be withdrawn in accordance with the plea,
19  Your Honor.
20          THE COURT:  They would not have been granted by
21  the Court anyway because there have been pending motions and
22  in addition to the fact of the situation we're in.  With
23  regards to the ability to proceed with trials and everything
24  else, that would not have presented a problem either.
25          MR. SALINAS:  That's correct, Judge.

1          THE COURT:  But you are withdrawing those, right?

2          MR. SALINAS:  That's correct.

3          THE COURT:  Okay.  Is your client here?

4          MR. SALINAS:  Yes, Your Honor.

5          May he approach?

6          THE COURT:  Yes.

7          MR. SALINAS:  Your Honor, can I approach with a

8    facemask?

9          THE COURT:  Well, you need to keep your distance.

10          MR. SALINAS:  Right.

11          THE COURT:  You actually can do it from over

12    there.

13          MR. SALINAS:  Okay.  Thank you.

14          THE COURT:  And probation officer can move up here

15    if you want to.

16       (Pause/voices off record.)

17          THE COURT:  You can move the microphone to -- you

18    don't have to be right on top of it, Mr. Wadhwani.  We'll be

19    able to hear you.

20          DEFENDANT WADHWANI:  Okay.

21          THE COURT:  Okay.  Criminal No. M-19-1995, United

22    States of America versus Sunil Wadhwani.

23          The Government has indicated they're present and

24    ready.  The Defense is present and ready.

25          Mr. Wadhwani's present and ready with Mr. Oliveira

7

1   and Mr. Salinas as his lawyers; is that right?

2           MR. SALINAS:  That's correct, Judge.

3           MR. OLIVEIRA:  Yes, sir.

4           THE COURT:  This is a change in plea?

5           MR. SALINAS:  That's correct, Judge.

6           THE COURT:  We do have some people attending by

7   phone.

8           Can you please announce yourselves?

9           MS. AREVALO:  Diana Arevalo with *The Monitor*,

10  Your Honor.

11          MR. HENDRICKS:  Dave Hendricks with Channel 5.

12          THE COURT:  Is anybody else on the phone?

13      (No audible response.)

14          THE COURT:  The only thing I'd ask of those of you

15  who are attending by phone, the policy normally would be

16  that if we weren't under the present situation, you could be

17  present in the courtroom.  The only situation here is that I

18  do ask you that you not -- recorded anyway what's going on

19  here obviously.  People can buy the tape from -- not the

20  tape but the -- actually the system itself works so that you

21  can actually buy the copy of what's going on here, but as

22  far as you taping it, the Court would ask you not to do

23  that.

24          Are you all in agreement to this?

25          MS. AREVALO:  Yes, Your Honor.

1          MR. HENDRICKS:  Yes, Your Honor.

2          MS. AREVALO:  But just a little bit hard to hear

3    the Defendant and his attorneys.

4          THE COURT:  You what?

5          MS. AREVALO:  It's a little bit hard to hear the

6    Defendant and his attorneys, Your Honor.

7          THE COURT:  Okay.  If it's hard for you, it would

8    be hard for me also so they are going to be standing close

9    to their microphones and will be able to speak so that we

10   all can hear them.

11         MS. AREVALO:  Thank you.

12         THE COURT:  Since this is a change in plea,

13   Mr. Wadhwani, if you would please raise your right hand so

14   you can be sworn in, sir?

15      (Defendant sworn.)

16         THE COURT:  Mr. Wadhwani, do you understand that

17   having been sworn all your answers to my questions have to

18   be truth and if they are not, you are subjecting yourself to

19   the penalties of perjury and/or of making a false statement;

20   do you understand that, sir?

21         DEFENDANT WADHWANI:  I do, Your Honor.

22         THE COURT:  What is your full, true and correct

23   name, sure?

24         DEFENDANT WADHWANI:  Sunil Mawandas (phonetic)

25   Wadhwani.

1              THE COURT:  And, sir, it's my understanding that

2   today you would like to change your plea from not guilty to

3   guilty with regard to one of the charges contained against

4   you in the Indictment.  In the United States, when a person

5   pleads guilty, they give up some very important rights.  I'm

6   going to explain some of these to you.

7              If at any point you did not understand something

8   that I said or you did not hear something that I said, would

9   you please stop me and let me know?

10             DEFENDANT WADHWANI:  Yes, Your Honor.

11             THE COURT:  If any point you would like to visit

12  with your lawyers, if you would just inform the Court, you

13  can visit with them privately before you answer any question

14  or make any statement.

15             DEFENDANT WADHWANI:  Yes, Your Honor.

16             THE COURT:  How old are you now, sir?

17             DEFENDANT WADHWANI:  Excuse me, Your Honor?

18             THE COURT:  How old are you now, sir?

19             DEFENDANT WADHWANI:  I'm 57, Your Honor.

20             THE COURT:  How far have you gone in school, sir?

21             DEFENDANT WADHWANI:  High school and one year of

22  college.

23             THE COURT:  And so you went -- you obviously speak

24  and understand and read and write English.

25             DEFENDANT WADHWANI:  Yes, Your Honor.

1          THE COURT:  Have you ever been treated by a doctor

2   or admitted to a hospital for a mental disease or mental

3   disorder of any kind?

4          DEFENDANT WADHWANI:  No, Your Honor.

5          THE COURT:  Mr. Wadhwani, have you at any point

6   taken any narcotic drugs, medicine or pills or drunk any --

7   have you don't the last 24 hours taken any kind of drugs,

8   medicine or pills or drunk any alcoholic beverages?

9          DEFENDANT WADHWANI:  No, Your Honor.

10         THE COURT:  Mr. Salinas or Mr. Oliveira, do you

11  all have any doubt as to his competence to understand these

12  proceedings and to enter a knowing plea at this time?

13         MR. SALINAS:  Your Honor, I have no doubt as to

14  his competence.

15         THE COURT:  The Court is going to find that

16  Mr. Wadhwani is competent to understand these proceeding and

17  to enter a knowing plea in his case.

18         Sir, have you had an opportunity to discuss your

19  case with your lawyer?

20         DEFENDANT WADHWANI:  Yes, I have, Your Honor.

21         THE COURT:  Are you satisfied with the way they

22  have represented you?

23         DEFENDANT WADHWANI:  Yes, Your Honor.

24         THE COURT:  Have you received or seen a copy of

25  the Indictment or the formal charges against you in your

1    case?

2              DEFENDANT WADHWANI:  Yes, I have, Your Honor.

3              THE COURT:  Have you had sufficient time to visit

4    with your lawyers about the allegations, the charges?

5              DEFENDANT WADHWANI:  Yes, Your Honor.

6              THE COURT:  Would you please rearraign the

7    Defendant?

8              MR. LOPEZ:  Thank you, Your Honor.  United States

9    District Court, Southern District of Texas, McAllen

10   Division, United States of America versus Sunil Wadhwani,

11   Criminal No. M-19-1995, Indictment, the Grand Jury charges

12   in Count 1, conspiracy to commit honest services wire fraud,

13   at all times relevant to this Indictment with dates, times

14   and amounts being approximates, relevant individuals and

15   entities.

16             Paragraph 1, Defendant Ricardo Quintanilla, also

17   known as Richard, Quintanilla was a businessman who lived

18   and worked in Weslaco, Texas.

19             Paragraph 2, Defendant Sunil Wadhwani was a

20   businessman who lived and worked in McAllen, Texas.

21             Paragraph 3, Person A is a business associate of

22   Defendant Wadhwani.

23             Paragraph 4, Person B is a resident of the Rio

24   Grande Valley located in the State of Texas.

25             Paragraph 5, Commissioner A was a commissioner of

1    the Weslaco City Commission and Economic Development

2    Corporation of Weslaco board member during all times

3    relevant to this Indictment.

4            General allegations, the Economic Development

5    Corporation of Weslaco.

6            Paragraph 6, the Economic Development Corporation

7    of Weslaco herein after "the Corporation" is a nonprofit

8    corporation specifically governed by the Texas Development

9    Corporation Act as amended, Texas Local Government Code

10   Chapter 501 therein after referred to as the "Development

11   Corporation Act."  The purpose of the Corporation is to

12   promote, assist and enhance economic and industrial

13   development in accordance with the Articles of

14   Incorporation.  The Corporation shall have no members.

15           Paragraph 7, the business and affairs of the

16   Corporation and all corporate power shall be exercised or

17   under the authority of the Board of Directors herein after

18   "the Board" appointed by the governing body of the City of

19   Weslaco in the manner provided in Article VI of the Articles

20   of Incorporation as from time to time amended and subject to

21   the applicable limitations imposed by the Development

22   Corporation Act, the Texas Nonprofit Corporation Act, the

23   Texas Business Corporation Act, the Articles of

24   Incorporation and these bylaws as each are from time to time

25   amended.  The Board may be contract, resolution or otherwise

1    give general or limited or special power and authority to

2    the officers and employees of the Corporation to transact

3    the general business or any special business of the

4    Corporation and may give powers of attorneys to the agents

5    of the Corporation to transact any special business

6    requiring such authorization.

7            Paragraph 8, the Board may plan and direct its

8    work through the executive director of the Corporation who

9    will be charged with the responsibility of carrying out the

10   programs as adopted and planned by the Board.

11           Paragraph 9, for the purpose of convening a

12   meeting and transacting a business, a quorum shall consist

13   of four directors.  In addition to such quorum requirement,

14   any action taken by the Board shall require the affirmative

15   vote of the Board of Directors.

16           Paragraph 10, the directors must be present in

17   order to vote at any meeting.  In the event that a director

18   is aware of a conflict of interest or potential conflict of

19   interest with regard to any particular vote, the director

20   shall bring the same to the attention of the meeting and

21   shall abstain from the vote.  The termination of a conflict

22   of interest shall be made in accordance with Chapter 171 of

23   the Texas Local Government Code.

24           Paragraph 11, the elected officers of the

25   Corporation shall be a president, vice-president, secretary

14

1  and treasurer.  Such officers shall have the authority to

2  perform the duties of the offices as the Board may from time

3  to time prescribe.  Any two or more offices may be held by

4  the same person except the office of the president and

5  secretary.  All elected officers shall be members of the

6  Board of Directors.

7          Paragraph 12, the president and secretary shall

8  execute any contracts or other instruments which the Board

9  has approved and authorized to be executed provided however

10 that the Board may, by appropriate resolution, authorize any

11 other officer or officers or any other agent or agents

12 including the executive director of the Corporation to enter

13 into contracts or execute and deliver any instrument in the

14 name and on behalf of the Corporation.  Notwithstanding

15 anything to the contrary, the Corporation shall not make any

16 commitment to disburse or for the disbursal of any funds for

17 any one project in excess of 10 percent of the total gross

18 annual revenues of the Corporation or be $100,000, whatever

19 is greater, without the prior approval of the City

20 Commission.  In February of 2013, four members of the

21 Corporation were removed and replaced by Weslaco City

22 Commissioners including Commissioner A, the Weslaco City

23 Commission.

24          Paragraph 14, the Texas Constitution and the laws

25 of the State of Texas and the Charter of the City of Weslaco

1    establish ethical standards of conduct for elected public

2    officials including Weslaco City commissioners.  These

3    standards include an oath to faithfully execute the duties

4    of the office of commissioner and to preserve, protect and

5    defend the Constitution and the laws of the United States

6    and the State of Texas.  Accordingly, commissioners owe a

7    fiduciary duty to the City of Weslaco, the Commission and

8    the people of the City of Weslaco.

9         Paragraph 15, as officials in the City Government,

10   Weslaco City commissioners including Commissioner A owed a

11   fiduciary duty to the City of Weslaco and to its citizens to

12   perform the duties and responsibilities of their free from

13   corrupt influence.  As elected officials in the State of

14   Texas, Weslaco City commissioners swore to uphold the United

15   States constitution, the Texas Constitution and the laws of

16   the State of Texas and to faithfully execute the duties of

17   their office.

18        Paragraph 16, the Weslaco City Commission is

19   authorized to take official action only when a quorum, a

20   majority of duly-elected commissioners, is present.  When a

21   quorum was present, the commission could act based on a

22   majority vote.

23        Paragraph 17, pursuant to the Texas Open Meetings

24   Act, the Texas Government Code annotated Section 551, the

25   Commission, as a city government in Texas, was authorized to

1  conduct official business only after providing at least 72

2  hours of public notice of the time, place and the subject

3  matter of the meeting.  Such meetings were generally

4  required to be made open to the public with closed meetings

5  and executive sessions permitted under only narrowly-drawn

6  exceptions.

7           The Motel 6 project in Weslaco, Texas.

8           Paragraph 18, during 2013, the Corporation entered

9  into a development agreement providing $300,000 of

10  incentives to Nolana Self Storage, LLC doing business as

11  Motel 6 herein after "NSS," a company owned by Wadhwani to

12  construct a Motel 6 in Weslaco, Texas.  The finalized terms

13  of the Development Agreement provided that payment would be

14  provided by the Corporation as follows: 150,000 upon the

15  pouring of the concrete foundation and 150,000 upon the

16  Corporation's receipt of a copy of the Certificate of

17  Occupancy but no earlier than October 14th, 2014;

18           Paragraph 19, because the Development Agreement

19  referenced in paragraph 18 exceeded $100,000, it required

20  and received the approval of the Weslaco City Commission.

21           The conspiracy.

22           Paragraph 20, from at least April 2013 through in

23  or about November 2014 in the Southern District of Texas and

24  elsewhere, Ricardo Quintanilla and Sunil Wadhwani, Person A,

25  Person B and Commissioner A did knowingly combine, conspire,

1  confederate and agree with one another and with others known

2  and unknown to the Grand Jury to devise and intent to devise

3  a scheme and artifice to defraud and to deprive by means of

4  material false and fraudulent pretenses representations and

5  promises and to transmit and cause to be transmitted by

6  means of wire communication and interstate commerce any

7  writings, signs, signals, pictures and sounds for the

8  purpose of executing the scheme and artifice to defraud and

9  deprive, that is, to deprive the City of Weslaco, the

10  Weslaco City Commission, the Corporation and the citizens of

11  Weslaco of their right to the honest services of

12  Commissioner A through bribery, in violation of Title 18,

13  United States Code, Section 1343 and 1346.

14          The scheme to defraud.

15          Paragraph 21, from in or about April 2013 through

16  in or about November 2014 in the Southern District of Texas

17  and elsewhere, the Defendant, Sunil Wadhwani, Ricardo

18  Quintanilla, Person A, Person B and Commissioner A and

19  others known and unknown to the Grand Jury devised and

20  intended to devise a scheme and artifice to defraud and to

21  deprive the City of Weslaco, the Weslaco City Commission,

22  the Corporation and the citizens of Weslaco of their

23  intangible right to the honest services of Commissioner A,

24  an elected official, through bribery.

25          The purpose of the conspiracy.

1          Paragraph 22, the purposes of the conspiracy

2     included but were not limited to the following:

3          Paragraph 23, Wadhwani to enrich himself by

4     receiving incentive payments to construct and develop a

5     Motel 6 in Weslaco, Texas in exchange for the payment of

6     bribes;

7          Paragraph 24, Quintanilla to enrich himself by

8     keeping a portion of the bribe funds paid to him by Wadhwani

9     and then pay the remainder of the bribe funds to Person B

10    and Commissioner A;

11         Paragraph 25, for Commissioner A to enrich himself

12    or herself by accepting bribes in exchange for using his

13    official position as a Weslaco City Commissioner and

14    Corporation board member to take official acts to benefit

15    and help Wadhwani's business receive incentive payments;

16         Paragraph 25, for Person B to enrich himself or

17    herself by keeping a portion of the bribe funds paid to him

18    by Wadhwani through Quintanilla.

19         Manner and means of the conspiracy.

20         Paragraph 27, the manner and means by which the

21    Defendants carried out the conspiracy included but were not

22    limited to the following:

23         Paragraph 28, Wadhwani, Quintanilla, Person A,

24    Person B and/or Commissioner A met at locations in the

25    Southern District of Texas and elsewhere to discuss the

1  official action that would be taken to benefit Wadhwani and

2  his business entities;

3       Paragraph 29, Wadhwani paid thousands of dollars

4  to Quintanilla who would then funnel bribe payments to

5  Person B and Commissioner A in efforts to conceal the nature

6  and source of the bribes;

7       Paragraph 30, in order to conceal the scheme and

8  bribe payments to Commissioner A, Wadhwani, Quintanilla,

9  Person A and Person B circulated a drafted a fictitious

10  consulting services agreement between a business entity

11  owned by Wadhwani and a business entity owned by Person B;

12       Paragraph 31, Commissioner A cast votes to approve

13  and modify a development agreement which included incentive

14  payments to a business entity owned by Wadhwani in exclude

15  for bribe payments;

16       Paragraph 32, Wadhwani, Quintanilla, Person A,

17  Person B and Commissioner A and their coconspirators used

18  wire communications and interstate commerce such a mobile

19  messaging applications, emails and interstate bank transfers

20  in furtherance of their scheme to defraud.

21       Over acts.

22       Paragraph 33, in furtherance of the conspiracy and

23  in order to accomplish its objectives, Wadhwani,

24  Quintanilla, Person A, Person B, Commissioner A and their

25  coconspirators committed the following overt acts among

1    others in the Southern District of Texas and elsewhere.

2              Paragraph 34, by at least 2013, Defendants

3    Wadhwani, Quintanilla, Person A, Person B, Commissioner A

4    and others devised a scheme to funnel bribe payments in

5    exchange for awarding a development agreement with favorable

6    terms to construct and develop a Motel 6 in Weslaco, Texas.

7              Paragraph 35, on April 25th, 2013, Person A emails

8    Quintanilla utilizing email address rick9365@gmail.com

9    requesting Quintanilla review a letter that would be sent to

10   the Corporation advising them of Wadhwani's intent to build

11   and operate a Motel 6 in Weslaco, Texas.

12             Paragraph 36, on or about April 25th, 2013,

13   Wadhwani submitted an incentive application to the

14   Corporation proposing a Motel 6 to be built in Weslaco,

15   Texas.  The executive director of the Corporation's

16   preliminary recommendation was to provide a $300 incentive

17   reimbursement based on a documented total project

18   expenditure of $3 million to include soft and hard costs for

19   the development plus land costs.

20             Paragraph 37, in May of 2013, Wadhwani received a

21   letter of commitment from International Bank requiring

22   150,000 in funding from the Corporation prior to receiving

23   $2,830,500 in funds from International Bank to construct a

24   Motel 6 in Weslaco, Texas.  In order to obtain the funds and

25   construct the Motel 6, Defendants took the following actions

1    described in the following paragraphs:

2         Paragraph 38, on or about May 1st, 2013, Wadhwani

3    obtained a letter of commitment advising Wadhwani that

4    International Bank had approved a $2,830,500 for the purpose

5    of construction and permanent financing for the proposed

6    Motel 6 in Weslaco, Texas.  One condition of the loan was

7    that Wadhwani would provide proof that $150,000 in funding

8    from the Corporation be in place prior to receiving any

9    funds from International Bank;

10        Paragraph 39, on May 2nd, 2013, Person A emailed

11   the executive director of the Corporation a letter of intent

12   advising the Corporation of Wadhwani's intent to build and

13   operate a Motel 6 in Weslaco, Texas.  This was the same

14   letter Person A sent to Quintanilla on April 25th, 2013;

15        Paragraph 40, on May 8th, 2013, at a special

16   meeting for the Corporation, Wadhwani, Person A and others

17   representing themselves as the company Sarina Group, Limited

18   herein after "Sarina Group" made a presentation regarding

19   the Motel 6 project to the Corporation.  An incentive of up

20   to $300,000 to Sarina Group for the Motel 6 project was

21   unanimously approved including a vote from Commissioner A;

22        Paragraph 41, on May 9th, 2013, Person A emailed

23   the executive director of the Corporation requesting any

24   news regarding Sarina Group's request.  The executive

25   director of the Corporation advised the Corporation

1   authorized an incentive of up to $300,000 based on an

2   investment of $3 million including soft and hard costs of

3   the project plus land.  In addition, the next step would be

4   for the Weslaco City Commission to approve the incentive

5   payment;

6          Paragraph 42, on May 15th, 2013, Wadhwani received

7   a letter via email notifying Sarina Group of the

8   Corporation's authorization of an incentive up to $300,000.

9   The $300,000 incentive payable would be made as follows:

10  50,000 upon certificate of occupancy, five yearly payments

11  of $50,000 on the anniversary date of the certificate of

12  occupancy;

13          Paragraph 43, May 15th, 2013, Person A emailed the

14  executive director of the Corporation requesting half the

15  funds be available at the beginning of the project due to

16  stipulations associated with the bank loan.  In addition,

17  Person A requested the Corporation to release the remaining

18  150,000 by the end of the year.  On May 23rd, 2013, Person A

19  emailed the executive director of the Corporation a letter

20  on behalf of Wadhwani formally requesting the incentive be

21  frontloaded and that 50 percent of the funds be available

22  when the project breaks ground;

23          Paragraph 44, on May 29th, 2013, Wadhwani received

24  a copy of the letter via email detailing the revision of the

25  incentive payments.  The letter detailed that based upon

1    Sarina Group's request to provide more funding at the

2    inception of the project and based on the Corporation's

3    requirement that the funding be performance based, the

4    executive director of the Corporation proposed the

5    following: 25,000 upon approval of the underground plumbing

6    inspection; 25,000 upon approval of the foundation

7    inspection; 25,000 upon the approval of the rough-in

8    inspection; 25,000 upon approval of the ceiling inspection;

9    25,000 upon approval of the fire cover-up inspection; 25,000

10   upon approval of the final inspection; 75,000 upon the

11   receipt of the Certificate of Occupancy and open for

12   business; 75,000 upon the first anniversary of the business

13   opening.  The executive director of the Corporation advised

14   the Motel 6 project would be presented to the Weslaco City

15   Commission at the meeting scheduled on June 4th, 2013 and

16   that the incentive offer is subject to approval by the

17   Weslaco City Commission and final negotiation of the terms

18   of the Development Agreement;

19          Paragraph 45, on June 4th, 2013, at a regular

20   meeting of the Weslaco City Commission, the Weslaco City

21   Commission authorized a development agreement between the

22   Corporation and Sarina Group that provided an incentive of

23   over $100,000.  The motion carried unanimously including a

24   vote from Commissioner A;

25          Paragraph 46, on June 28th, 2013 during a special

1   meeting of the Corporation, the executive director of the

2   Corporation resigned and was replaced with an interim

3   executive director of the Corporation.  Commissioner A

4   approved the resignation and placement of the interim

5   executive director of the Corporation;

6              Paragraph 47, on or about July 30th, 2013,

7   Wadhwani received a letter detailing a revision of the

8   incentive payments.  The letter detailed that based upon

9   Sarina Group's request to provide more funding at the

10   inception of the project and based on the Corporation

11   requirement that funding be performance based, the interim

12   executive director of the Corporation proposed the

13   following: 75,000 upon completion of the foundation; 75,000

14   upon completion of the third floor framing; 75,000 upon

15   receipt of a copy of the Certificate of Occupancy; and

16   75,000 on the first anniversary of the Certificate of

17   Occupancy;

18              Paragraph 48, on August 21st, 2013, during a

19   regular meeting of the Corporation, the Corporation

20   authorized a revision of the method of earning the incentive

21   by Sarina Group and authorized the interim executive

22   director of the Corporation to present the revised method of

23   earning the incentive and to prepare and execute the

24   Development Agreement.  Commissioner A voted for and

25   supported the revision;

1          Paragraph 49, on August 23rd, 2013, Sunil Wadhwani

2    was provided a letter via email detailing a revision of the

3    incentive payments.  The letter detailed that at the

4    Corporation's meeting held on August 21st, 2013, the

5    Corporation authorized a revision of the incentive payout as

6    follows: 150,000 upon the pouring of the concrete

7    foundation; 150,000 upon the Corporation's receipt of a copy

8    of the Certificate of Occupancy;

9          Paragraph 50, on September 30th, 2013, during a

10   special meeting of the Corporation, the interim executive

11   director of the Corporation was removed and replaced with

12   another interim executive director of the Corporation.

13   Commissioner A supported for and voted for the removal of

14   the interim executive director of the Corporation;

15         Paragraph 51, on September 30th, 2013, during a

16   special meeting of the Corporation, the Corporation again

17   authorized a modification of the Development Agreement to

18   authorize interim executive director of the Corporation to

19   present the modification to the Development Agreement and to

20   prepare and to execute the modification to the Develop

21   Agreement.  The motion carried unanimously including a vote

22   of approval from Commissioner A for the authorization of the

23   modification.

24         Paragraph 52, on October 4th, 2013, Wadhwani was

25   provided a letter via email detailing a revision of the

1  incentive payments.  The letter detailed that at the

2  Corporation's meeting held on September 30th, 2013, the

3  Corporation authorized a revision of the incentive payout as

4  follows: 150,000 upon pouring of the concrete foundation;

5  150,000 upon the Corporation's receipt of a copy of the

6  Certificate of Occupancy by no earlier than October 14th,

7  2014;

8         Paragraph 53, on December 2nd, 2013, Wadhwani

9  signed the Development Agreement with the Corporation for

10 the Motel 6 project.  However the Development Agreement was

11 between the Corporation and NSS;

12        Paragraph 54, on December 23rd, 2013, Person A

13 provided the interim executive director of the Corporation

14 supporting documents as evidence of the completion of NSS'

15 obligation and requested the release of the first payment of

16 150,000;

17        Paragraph 55, on or about December 31st, 2013, the

18 Corporation wrote a check in the amount of $150,000 to NSS.

19 On or about January 3rd, 2014, said check was deposited into

20 a bank account for which Wadhwani is an authorize signer;

21        Paragraph 56, on or about November 1st, 2014, the

22 Corporation wrote a check from a BBVA Compass Bank account

23 in the amount of $150,000 to NSS.  On or about November 3rd,

24 2014, said check was deposited into an international bank

25 account.  Wadhwani is an authorized signer for this account;

1          Paragraph 57, on December 27th, 2013, after the

2    Development Agreement between the Corporation and NSS had

3    been signed, Person A sent Quintanilla a purported

4    consulting services agreement between NSS and Person B.  The

5    Consulting Services Agreement contained handwritten notes,

6    edits and requested revisions.

7          Bribe payments.

8          Paragraph 58, in order to obtain the Development

9    Agreement containing over 300,000 in incentive agreements

10   from the Corporation, City of Weslaco, Wadhwani paid

11   thousands of dollars in bribe payments to Quintanilla who in

12   turn provided portions of the bribe payments to Person B and

13   Commissioner A.

14         Paragraph 59, in return for the receipt of the

15   bribe payments, Commissioner A agreed to vote favorably for

16   the Development Agreement and its revisions as a board

17   member for the Corporation and as a Weslaco City

18   commissioner.

19         Mr. Wadhwani, to the charge contained in Count 1

20   of the Indictment, how do you plead, guilty or not guilty?

21         DEFENDANT WADHWANI:  Guilty.

22         THE COURT:  Mr. Wadhwani, you do understand that

23   under the Constitution and laws of the United States, you

24   can if you want to plead not guilty.  And if you plead not

25   guilty, then you have a trial by a jury or a judge on the

1    charges contained in the Indictment against you.

2              Do you understand that?

3              DEFENDANT WADHWANI:  I do, Your Honor.

4              THE COURT:  Do you also understand that at a

5    trial, you would have the right to the assistance of a

6    lawyer whether you could afford one or not?  And if you

7    could not afford one, the Court would appoint one to

8    represent you at all stages of the proceedings against you

9    at no cost to you.

10             Do you understand that?

11             DEFENDANT WADHWANI:  I do, Your Honor.

12             THE COURT:  Do you also understand that at a

13   trial, you would be presumed to be innocent and the

14   Government would have to overcome that presumption and prove

15   you guilty by competent evidence and beyond a reasonable

16   doubt and it would not be up to you to prove your innocence.

17             Do you understand that, sir?

18             DEFENDANT WADHWANI:  I do, Your Honor.

19             THE COURT:  Do you also understand that in the

20   course of a trial, the witnesses for the Government would

21   have to come into the courtroom and testify in your presence

22   and in the presence of your attorney?  Your attorney could

23   cross-examine the witnesses for the Government, object to

24   any evidence offered by the Government and present any

25   evidence on your behalf that you might want to present.

1          Do you understand that?

2          DEFENDANT WADHWANI:  I do, Your Honor.

3          THE COURT:  Do you also understand that at a trial

4    while you would have the right to take the witness stand and

5    testify if you chose to do so, you would also have your very

6    important constitutional right not to testify and not to

7    incriminate yourself under the Fifth Amendment of the United

8    States Constitution and no one could hold it against you

9    that you did not testify?

10          Do you understand that?

11          DEFENDANT WADHWANI:  I do, Your Honor.

12          THE COURT:  Do you also understand that if you

13   continue to plead guilty and if I do accept this guilty plea

14   that you're giving up and you're waiving up your right to a

15   trial and these other rights, which I've just mentioned and

16   discussed with you, including any rights which you may have

17   with regards to having any other hearing with regards to any

18   other motions or anything else?

19          Do you understand?

20          DEFENDANT WADHWANI:  I do, Your Honor.

21          THE COURT:  And that includes any right that you

22   would give up to have any jury determine any sentencing

23   factor in your case.

24          Do you understand that?

25          DEFENDANT WADHWANI:  Yes, Your Honor.

Case 7:19-cr-01995   Document 85   Filed on 06/24/20 in TXSD   Page 30 of 54

30

1          THE COURT:  And do you understand in your case,

2  there would not be a trial and I would simply enter a

3  judgment of guilty and sentence you on the basis of your

4  guilty plea?

5          Do you understand that?

6          DEFENDANT WADHWANI:  I do, Your Honor.

7          THE COURT:  Do you also understand that if you

8  continue to plead guilty, you give up your right not to

9  testify against yourself and not to incriminate yourself and

10 no one could hold it against you if you do not do that?

11         Do you understand that?

12         DEFENDANT WADHWANI:  I do, Your Honor.

13         THE COURT:  Are you willing to waive up and give

14 up your right to a trial and these other rights, which I've

15 just mentioned and discussed with you?  And that's what

16 happens when you plead guilty so are you willing to do that?

17         DEFENDANT WADHWANI:  Yes, Your Honor.

18         THE COURT:  You've told me already that you've

19 discussed with your attorney the charges contained in the

20 Indictment against you; is that correct?

21         DEFENDANT WADHWANI:  Yes, Your Honor.

22         THE COURT:  Do you understand what you're being

23 charged with?

24         DEFENDANT WADHWANI:  I do, Your Honor.

25         THE COURT:  Do you understand that if you told me

1    that you wanted to plead not guilty to Count No. 1 of your

2    Indictment, that in order to find you guilty, the Government

3    would have to prove at a trial by competent evidence and

4    beyond a reasonable doubt that from on or about April 2013

5    through on or about November 2014, within the jurisdiction

6    of this Court, Person A, Person B and Commissioner A did

7    knowingly combine, conspire, confederate that you and Person

8    A, Person B and Commissioner A did knowingly combine,

9    conspire, confederate and agree with one another and with

10   other persons known and unknown to the Grand Jury to devise

11   and intend to devise a scheme and artifice to defraud and to

12   deprive by means of material false and fraudulent pretenses,

13   representations and promises and to transmit and cause to be

14   transmitted by means of wire communication and interstate

15   commerce any writings, signs, signals, pictures and sounds

16   for the purpose of executing the scheme and artifice to

17   defraud and deprive, that is, to deprive the City of

18   Weslaco, the Weslaco City Commission, the Corporation, as

19   referred to in this Indictment, and the citizens of Weslaco

20   of their right to the honest services of Commissioner A

21   through bribery, in violation of Title 18, US Code, Section

22   1343 and Section 1346.

23              Do you understand that?

24              DEFENDANT WADHWANI:  Yes, Your Honor.

25              THE COURT:  And that the scheme to defraud was, as

1   alleged here, that from on or about April 2013 through on or

2   about November 2014, in the Southern District of Texas and

3   elsewhere you, Ricardo Quintanilla, Person A, Person B and

4   Commissioner A and others known and unknown to the Grand

5   Jury devised and intended to devise a scheme and artifice to

6   defraud and defraud the City of Weslaco, the Weslaco City

7   Commission, the Corporation, the citizens of Weslaco of

8   their intangible right to the honest services of

9   Commissioner A and elected officials through bribery and

10  that the purpose of this conspiracy included but was not

11  limited to the following:

12          That you were to enrich yourself by receiving

13  incentive payments to construct and develop a Motel 6 in

14  Weslaco, Texas in exchange for the payment of bribes;

15          That Quintanilla to enrich himself by keeping a

16  portion of bribe funds paid to him by you and then pay the

17  remainder of the bribe funds to Person B and Commissioner A;

18          For Commissioner A to enrich himself or herself

19  by accepting bribes in exchange for using his official

20  position -- his or her official position as a Weslaco City

21  Commissioner and Corporation board member to take official

22  acts to benefit and help you, your business receive

23  incentive payments;

24          And that for Person B to enrich himself or herself

25  by keeping a portion of the bribe funds paid to him or her

1  by you through Quintanilla;

2        And that the manner and means of the conspiracy

3  were carried out as alleged in this Indictment -- and that

4  would be on pages 6 through 7 -- that you, Quintanilla,

5  Person A, Person B and Commissioner A met at locations in

6  the Southern District of Texas and elsewhere to discuss the

7  official action that would be taken to benefit you and your

8  business entities;

9        That you paid thousands of dollars to Quintanilla

10 who would then funnel bribe payments to Person B and

11 Commissioner A in efforts to conceal the nature and the

12 source of the bribes;

13       That in order to conceal the scheme and bribe

14 payments to Commissioner A, you, Quintanilla, Person A and

15 Person B circulated and drafted a fictitious consulting

16 services agreement between a business entity owned by you

17 and a business entity owned by Person B;

18       And that Commissioner A cast votes to improve and

19 modify a development agreement which included incentive

20 payments to a business entity owned by you in exchange for

21 bribe payments;

22       And that you, Quintanilla, Person A, Person B and

23 Commissioner A and their coconspirators used wire

24 communications in interstate commerce such a mobile

25 messaging appliances, emails and interstate bank transfers

1  in furtherance of this scheme to defraud;

2          That in furtherance of this conspiracy, the

3  following overt acts, as alleged in page 7 through page 12

4  of this Indictment, were committed to further this

5  conspiracy:

6          In that the bribe payments that in order to obtain

7  the Development Agreement containing over $300,000 in

8  incentive agreements for the Corporation and City of

9  Weslaco, you paid thousands of dollars in bribe payments to

10 Quintanilla who in turn provided portions of the bribe

11 payments to Person B and Commissioner A;

12         That in return for the receipt of these

13 payments -- bribe payments, Commissioner A agreed to vote

14 favorably for the Development Agreement and its revision as

15 a board member for the Corporation as a Weslaco City

16 commissioner.

17         Do you understand that that's what they would have

18 to prove beyond a reasonable doubt in order for you to found

19 guilty of Count No. 1?

20         DEFENDANT WADHWANI:  Exactly, Your Honor.

21         THE COURT:  And you've discussed this with your

22 lawyers and they have explained this to you.

23         DEFENDANT WADHWANI:  Yes, Your Honor.

24         THE COURT:  Mr. Wadhwani, do you know what the

25 maximum sentence is that I could impose on you with regards

1    to the charge contained in Count 1 of your Indictment?

2              DEFENDANT WADHWANI:  Twenty years, Your Honor.

3              THE COURT:  You do know that it can be up to

4    20 years imprisonment and/or a $250,000 fine.

5              In addition to that, the Court could -- if it

6    incarcerates you, can impose a supervised-release term of up

7    to three years, which means that when you would be released

8    from prison, you'd be released under supervised release.  If

9    you violate any condition of supervised release, that term

10   would be revoked and you would serve that time in custody.

11             In addition to all this, the Court would have to

12   impose a $100 special assessment against you as required by

13   law.

14             The Court would also have to impose restitution

15   payments as to the amount of loss that would have been

16   suffered by any victim in this case including the City or

17   the Corporation.

18             Do you understand all that?

19             DEFENDANT WADHWANI:  I do, Your Honor.

20             THE COURT:  And you've had that explained to you

21   by your lawyers?

22             DEFENDANT WADHWANI:  Yes, Your Honor.

23             THE COURT:  And, Mr. Wadhwani, you're an American

24   citizen, right?

25             DEFENDANT WADHWANI:  Yes, I am, Your Honor.

1          THE COURT:  Do you need any further explanation as

2   to what the maximum possible punishment is in your case?

3          DEFENDANT WADHWANI:  No, sir.

4          THE COURT:  And you do understand that -- the

5   Court is going to find that the Defendant understands the

6   nature of the charges to which his plea is offered and

7   certainly aware of what the maximum possible punishment is

8   in his case.

9          Mr. Wadhwani, have you and your attorney talked

10  about the Sentencing Guidelines and what if any effect it

11  might have with regards to your sentencing?

12          DEFENDANT WADHWANI:  Yes, Your Honor.

13          THE COURT:  Do you understand that I will not be

14  able to determine what guideline sentence might apply in

15  your case until after a presentence report has been

16  completed and you and the Government have had an opportunity

17  to object to that Report; do you understand that?

18          DEFENDANT WADHWANI:  Yes, sir.

19          THE COURT:  Do you also understand that even after

20  there's been a determination as to what the guideline

21  sentence might be in your case, that based on all the

22  factors that the Court has to consider under the law as to

23  what the appropriate sentence should be in your case, that I

24  can make the decision that any sentence up to the maximum

25  possible punishment, as I explained it to you, could be

1   appropriate sentence regardless of what the guideline

2   determination might be; do you understand that, sir?

3            DEFENDANT WADHWANI:  Yes, sir.   Yes, Your Honor.

4            THE COURT:  Do you also understand that in our

5   federal system, we do not have parole?  When a person is

6   sent to prison, they serve the entire imprisonment time in

7   custody and when they get released, they get released on

8   whatever supervised-release term the Court might impose as

9   the time of sentencing; do you understand that, sir?

10           DEFENDANT WADHWANI:  Yes, Your Honor.

11           THE COURT:  The Court is going to find the

12  Defendant is aware of the Sentencing Guidelines, had a full

13  discussion with his attorney about them.

14           Mr. Wadhwani, has anybody threatened you or forced

15  you to pleading guilty or told you that if you did not plead

16  guilty, further charges or something would -- something else

17  would be charged against you or would be brought against

18  you?

19           DEFENDANT WADHWANI:  No, Your Honor.

20           THE COURT:  Is there any plea agreement as a

21  result of discussions between the Government and the Defense

22  in this case?

23           MR. LOPEZ:  Yes, Your Honor, and it reads in

24  pertinent part that the Defendant agrees to plead guilty to

25  Count 1 of the Indictment and to forfeit to the United

1    States $4,000 in United States currency which, as the

2    Defendant agrees, was involved in the commission of the

3    offense charged in the Indictment.

4           In exchange, the Government will recommend that

5    the offense level decrease by two levels pursuant to United

6    States Sentencing Guideline, Section 3E1.1(a) if the

7    Defendant clearly demonstrates acceptance of responsibility,

8    and that the remaining count of the Indictment be dismissed

9    at the time of sentencing.

10          THE COURT:  Mr. Salinas, is that the plea

11   agreement for your client?

12          MR. SALINAS:  That's the plea agreement,

13   Your Honor.

14          THE COURT:  Mr. Oliveira, is that correct?

15          MR. OLIVEIRA:  That's correct, Your Honor.

16          THE COURT:  Mr. Wadhwani, is that your plea

17   agreement with the Government?

18          DEFENDANT WADHWANI:  Yes, it is, Your Honor.

19          THE COURT:  You do realize also that -- I've not

20   said this to you, but the Court would have to order

21   restitution.  If there has been any loss by any entity or

22   any individual as a result of this commission of this

23   conspiracy, I would have to order that you make restitution

24   payments.

25          Do you understand that?

1          DEFENDANT WADHWANI:  Yes, Your Honor.

2          THE COURT:  Knowing that, does that change your

3  mind as to whether you want to continue to plead guilty?

4          DEFENDANT WADHWANI:  Excuse me, Your Honor.

5          THE COURT:  Knowing that, does that change your

6  mind as to whether you want to continue to plead guilty?

7          DEFENDANT WADHWANI:  No, Your Honor.

8          THE COURT:  Any anybody made any prediction or

9  tried to tell you or promise you the exact sentence that's

10  going to be imposed in your case?

11          DEFENDANT WADHWANI:  No, sir.  No, Your Honor.

12          THE COURT:  Knowing everything which I've

13  explained to you this afternoon, Mr. Wadhwani, do you still

14  want to plead guilty?

15          DEFENDANT WADHWANI:  Yes, Your Honor.

16          THE COURT:  The Court is going to find that the

17  plea of this Defendant is voluntary and not the result of

18  any force or threat or promise other than that recited in

19  his Plea Agreement.

20          I am going to ask the Government's attorney here

21  to state the facts as he and the Government claim they are.

22  Mr. Wadhwani, I want you to listen very closely because when

23  he's finished, I'm going to ask you if what he said about

24  you was true or was there any part of what he said about you

25  that was not true.

1          MR. LOPEZ:  Thank you, Your Honor.  From at least
2     April 2013 through on or about November 2014, in the
3     Southern District of Texas and elsewhere, Defendant
4     Sunil Wadhwani conspired with Ricardo Quintanilla and others
5     to devise and intend to devise a scheme and artifice to
6     defraud and deprive by means of material false and
7     fraudulent pretenses, representations and promises and to
8     transmit and cause to be transmitted by means of a wire
9     communication in interstate commerce any writings for the
10    purpose of executing a scheme to defraud and deprive the
11    City of Weslaco, Texas, the Weslaco City Commission and the
12    citizens of Weslaco of their right to the honest services of
13    Gerardo Tafolla listed as Commissioner A in the Indictment
14    through bribery.
15          There the relevant time period and as alleged in
16    the Indictment, Defendant Wadhwani and others attempted to
17    procure the receipt of a $300,000 incentive agreement with
18    favorable payout terms from the Weslaco City Commission and
19    the City of Weslaco to Sarina Group, Limited and/or Nolana
20    Self Storage, LLC through bribery.
21          During the relevant time period, Defendant Sunil
22    Wadhwani began communicating with Leonel Lopez, as listed as
23    Person B in the Indictment, and Ricardo Quintanilla about
24    obtaining such an incentive agreement for Sarina Group,
25    Limited and eventually Nolana Self Storage, LLC from the

1    Weslaco EDC and the City of Weslaco to assist in funding the

2    construction of a Motel 6 in Weslaco, Texas.

3         Wadhwani agreed with Quintanilla and others to pay

4    bribes through Quintanilla to a person who turned out to be

5    Gerardo Tafolla, a Weslaco City commissioner and Economic

6    Development Corporation board member, to obtain the votes

7    needed from the City of Weslaco and the Weslaco Economic

8    Development Corporation to obtain and to leave intact said

9    incentive agreement in the form in which it was ultimately

10   adopted.

11        In efforts to gain such an incentive agreement,

12   coconspirators including Wadhwani also received or caused

13   various emails in interstate commerce to be sent in

14   furtherance of the conspiracy to defraud.  Several of these

15   emails are listed within paragraphs 35 through 54 of the

16   Indictment.

17        In December 2013, the Weslaco Economic Development

18   Corporation, with the approval of the City of Weslaco,

19   approved an incentive agreement for $300,000 for Nolana Self

20   Storage, LLC to assist with the construction of a Motel 6 in

21   Weslaco, Texas.  The Agreement was also later signed by

22   Defendant Wadhwani.

23        As a result of and as payment for obtaining the

24   incentive agreement and for preserving its effect, Defendant

25   Wadhwani paid a bribe of at least $4,000 to an official who

1    turned out to be Commissioner Gerardo Tafolla that was

2    funneled through Defendant Ricardo Quintanilla.  The bribe

3    was paid in exchange for Tafolla casting favorable notes as

4    a Weslaco City commissioner authorizing the incentive of

5    over $100,000 by the Weslaco Economic Development

6    Corporation, as listed in the Indictment, and by casting

7    favorable votes as an Economic Development Corporation board

8    member, as listed within the Indictment, in favor of

9    revisions to the incentive agreement.

10           In accordance with the Incentive Agreement,

11    Defendant Wadhwani also caused the City of Weslaco and the

12    Weslaco Economic Development Corporation to send a $300,000

13    incentive payment through two interstate bank wire

14    transmissions of $150,000 each on or about January 3rd, 2014

15    and on or about November 3rd, 2014.

16           The Defendant admits that as a result of these

17    bribes, the City of Weslaco, the Weslaco City Commission and

18    the citizens of Weslaco, Texas were deprived of their right

19    to the honest services of Gerardo Tafolla, a Weslaco City

20    commissioner and Economic Development Corporation board

21    member.

22           During the relevant times listed in Count 1 of the

23    Indictment, Defendant also held an ownership interest in

24    Sarina Group, Limited and Nolana Self Storage, LLC.

25           The Defendant knew of the unlawful purpose of the

1  honest services wire fraud conspiracy, as alleged in Count

2  1, and joined in it willfully.

3          THE COURT:  So he was to receive -- the

4  Corporation was going to receive $300,000.

5          And how much was the bribe that was supposed to be

6  paid?

7          MR. LOPEZ:  The Corporation paid out $300,000 to a

8  company or business entity owned in part of Defendant

9  Wadhwani.  Defendant Wadhwani paid at least $4,000 in bribes

10  that was ultimately funneled to Commissioner Gerardo

11  Tafolla.

12          THE COURT:  So the bribe amount was actually

13  $4,000.  The incentive was out there to be had by

14  whatever -- whoever was going to build something.

15          MR. LOPEZ:  That's correct, Your Honor, the bribe

16  money was at least 4,000 and the incentive was to

17  Mr. Wadhwani's company.

18          THE COURT:  And it was out there that the

19  Corporation was going to be giving somebody $300,000 or just

20  because now Mr. Wadhwani started talking about a Motel 6, he

21  went to them and then he said, "I need a grant to do this"?

22          MR. LOPEZ:  I apologize, Your Honor.  When the

23  term "Corporation" is being used, are we referring to the

24  EDC?

25          THE COURT:  I'm referring to the governmental

1 corporation.

2          MR. LOPEZ:  Okay.

3          THE COURT:  I mean, obviously Mr. Wadhwani may

4 have a corporation also, but when I'm talking about

5 "Corporation," it's the Corporation that paid the $300,000

6 to Mr. Wadhwani or some of his entities.

7          MR. LOPEZ:  Your Honor, the agreement -- the

8 purpose of the bribe was to obtain not only the $300,000 but

9 obtain the $300,000 on terms that were favorable to what was

10 ultimately Nolana Self Storage and that's laid out --

11          THE COURT:  Favorable in that Nolana Self Storage

12 was going to build a motel in Weslaco?

13          MR. LOPEZ:  In terms of how the money was to be

14 received, Your Honor.  As it tracks out within the

15 Indictment, there's multiple different revisions to this

16 some of which were -- a lot of the money needed to be

17 frontloaded in order to construct this motel.

18          THE COURT:  But that's what the Corporation would

19 normally do.

20          MR. LOPEZ:  No, that is not what the Corporation

21 would normally do.

22          THE COURT:  The Record didn't offer incentives for

23 other people to start businesses and --

24          MR. LOPEZ:  Not in the manner in which it happened

25 in this case, Your Honor.

1          THE COURT:  Because of the fact that he offered to

2   pay somebody something if you help me, or what?

3          MR. LOPEZ:  That's part of it, Your Honor.  Not

4   only that, the method in which the payment happens is not in

5   accordance with the way that the EDC typical grants

6   incentive agreements, Your Honor.

7          THE COURT:  The method in which the $300,000

8   happened because it was wired to some other companies

9   outside of the area, is that it or what?

10          MR. LOPEZ:  No, Your Honor.  Typically when the

11   Weslaco EDC gives out grant money, Your Honor, that money is

12   paid out over large periods of time, not typically

13   frontloaded or given in quick succession as it was in this

14   case, Your Honor, which was predicated by the bribe payments

15   that were made to --

16          THE COURT:  But there's nothing that prohibits the

17   Corporation from having done it that way.  If they wanted to

18   pay -- give somebody $300,000 to build a Motel 6, they could

19   have.

20          MR. LOPEZ:  That's correct, Your Honor.

21          THE COURT:  It's the fact that this was different

22   because it was going to give you instant money rather than

23   payment over a period of time and the incentive -- the claim

24   here is that a $4,000 bribe was paid to one person who was

25   both a corporation and the city commission; is that right?

1          MR. LOPEZ:  That's correct, Your Honor.  He was a

2     board member on --

3          THE COURT:  To make this quick and not go through

4     the process they might normally go through from the

5     standpoint of incremental payments.

6          MR. LOPEZ:  That's correct, Your Honor.

7          THE COURT:  But there was nobody else that was

8     bidding or asking to build a Motel 6 in Weslaco.

9          MR. LOPEZ:  Your Honor, without getting into the

10    specifics of Motel 6s, Your Honor, I believe that there's

11    certain franchisee rights as to who could choose to do that.

12    There's additional information regarding whether the EDC

13    would have even given any grant money to anybody that was

14    trying to build a hotel or motel in the City of Weslaco at

15    that particular time.

16         THE COURT:  They've never given anybody money

17    before for anything in Weslaco?

18         MR. LOPEZ:  Your Honor, due to drops in hotel

19    occupancy rates at that period of time, Your Honor, the

20    likelihood of it without the support that was likely

21    predicated by the bribe payments, Your Honor, I don't

22    believe would have been the case.

23         THE COURT:  Mr. Wadhwani, so sometime between

24    April 2013 and November 2014, you had some communications

25    with the people that are referred to here as Person A,

1  Person B and Commissioner A and you agreed with them that

2  you would like to get some help from the Corporation and the

3  City with regards to building a Motel 6 in Weslaco.

4          DEFENDANT WADHWANI:  Yes, Your Honor.

5          THE COURT:  And you explained to them that you

6  would like the money right up front just to what they might

7  be able to provide as an incentive for you to start to be --

8  agree that this Motel 6 would be done.

9          DEFENDANT WADHWANI:  I missed -- I'm not

10 understanding you, Your Honor.  I'm sorry.

11         THE COURT:  You had a conversation with at least

12 one of those individuals referred to as Person A, Person B

13 and Commissioner A --

14         DEFENDANT WADHWANI:  I got that part.

15         THE COURT:  -- that you wanted the Corporation or

16 the City, as referred to as "Economic Corporation" or

17 whatever the name is --

18         DEFENDANT WADHWANI:  EDC.

19         THE COURT:  -- that you would like to build a

20 Motel 6 but you would like to build it under the conditions

21 that you would be given an incentive as a startup with

22 regards to this project.

23         DEFENDANT WADHWANI:  Yes, Your Honor.

24         THE COURT:  And that you wanted them to approve

25 the project and that as a result of that with regards to one

1    of these commissioners through some other individuals

2    possibly you did make a payment of $4,000 that you knew that

3    commissioner was going to keep for his own -- his or her own

4    personal use.

5              DEFENDANT WADHWANI:  Yes, Your Honor.

6              THE COURT:  And the purpose of you paying that

7    amount of money was to make sure that this occurred.

8              DEFENDANT WADHWANI:  Yes, Your Honor.

9              THE COURT:  That the Corporation would agree to go

10   through the $300,000, that they would agree that the City

11   would also approve this and that then it would be I guess

12   electronically sent outside of the state, the amount of

13   money?

14             DEFENDANT WADHWANI:  Outside of the state?  No,

15   Your Honor.  It was deposited into my account from the City

16   of Weslaco.

17             THE COURT:  Did you not indicate that it was sent

18   someplace?

19             MR. LOPEZ:  These are interstate bank transfers,

20   Your Honor.

21             THE COURT:  Interstate bank but in the same state.

22             MR. LOPEZ:  The bank transmissions are in the same

23   state, Your Honor, but they're -- the bank entities also

24   have branches in Texas, Your Honor.

25             THE COURT:  But money was transferred interstate.

1          MR. LOPEZ:  That's correct, Your Honor.

2          THE COURT:  But was going to end up here.

3          MR. LOPEZ:  That's correct, Your Honor.

4          THE COURT:  And so you knew that paying somebody

5   to receive this was not the right thing to do and it was

6   done through Sarina Group as well as the Nolana corporation

7   and -- that was referred to by the Prosecutor; is that

8   right?

9          DEFENDANT WADHWANI:  Yes, Your Honor.

10          THE COURT:  And knowing that you still went ahead

11   and did it; is that correct?

12          DEFENDANT WADHWANI:  It was a bad mistake on my

13   part, Your Honor, yes.

14          THE COURT:  Yes.  And it encourages that kind of

15   behavior.

16          DEFENDANT WADHWANI:  Well, just one other thing,

17   Your Honor.  I hope I don't get -- say this, but everybody

18   got money from the EDC.  I was just at the wrong place at

19   the wrong time.  That's my opinion, Your Honor.  And still

20   not an excuse but, yes, I did.

21          THE COURT:  Well, the Court is satisfied that

22   there has been evidence presented here that there has been a

23   violation and that there was a conspiracy involved as

24   alleged in Count 1.

25          You still want to continue to plead guilty; is

1   that right?

2          DEFENDANT WADHWANI:  Yes, Your Honor.  But I have

3   something I want to say.  I hope, you know, you or Bobby

4   don't get upset but the Motel 6 since it's been open has

5   made $2 million almost for the City of Weslaco and created

6   60 jobs for the last seven years.  Just went about it the

7   wrong way because --

8          THE COURT:  Well, I am going to -- you tell me you

9   want to continue to plead guilty, but at the time of

10  sentencing you want to make the argument that frankly this

11  was beneficial from the standpoint of the City, but at the

12  same time it is a crime to try to bribe somebody to get

13  something even if it ends up being beneficial and it

14  encourages that kind of behavior, Mr. Wadhwani.

15         DEFENDANT WADHWANI:  I understand.

16         THE COURT:  And so we'll have all these

17  conversations at the time of sentencing.

18         DEFENDANT WADHWANI:  I understand, Your Honor.

19         THE COURT:  You still want to plead guilty; is

20  that right?

21         DEFENDANT WADHWANI:  Yes, Your Honor.

22         THE COURT:  The Court is going to find that his

23  plea is voluntary, not the result of any force or threat or

24  promise other than that recited in his Plea Agreement.

25             I am finding that there is a factual basis for his

1  guilty plea.  Since he has acknowledged that he is guilty as

2  charged in Count 1, since he knows of his right to a trial,

3  what the maximum possible punishment is, and since he's

4  voluntarily pleading guilty, I will accept his guilty plea.

5           Mr. Salinas, were you going to say something?

6           MR. SALINAS:  No, Your Honor.  I'm just going to

7  indicate to Mr. Wadhwani that those are probably issues that

8  would be better suited and discussed at sentencing.

9           THE COURT:  Yes, those are issues that can be

10  discussed at sentencing.

11           I will order that a presentence investigation

12  report in your case be prepared, Mr. Wadhwani.  The Court's

13  going to order that that Report be prepared by June the

14  26th.  Objections to that Report by either the Government or

15  the Defense have to be filed by July 10th.  Final Report has

16  to be prepared by the Probation Office by July 24th.

17           Is he going to insist on his 35-day waiting period

18  after that before he is sentenced?

19           MR. SALINAS:  No, Your Honor.

20           THE COURT:  Sentencing in his case will be as

21  follows:

22           The Court scheduled it for July the 30th at 9:30

23  in the morning in this courtroom.  It just depends on how

24  we're doing in July as to the status of the courtroom.  I do

25  appreciate your patience with regards to how we're operating

1   but you all know what the reason for that is.

2          I also want to thank the people who attended by

3   phone and I'm sure that you understand why we're proceeding

4   in this fashion.

5          If you all don't have anything else --

6          MR. SALINAS:  Your Honor, he's out on bond.

7          THE COURT:  Oh, he's out on bond.  I've seen the

8   pretrial services release.  I realize he's out on bond.

9          Does the Government have any objection for him to

10  continue on a bond while he's awaiting sentencing?

11         MR. LOPEZ:  The Government has no objection,

12  Your Honor.

13         THE COURT:  The Court's convinced by the standard

14  required by law that he's not likely to flee or impose a

15  danger pending his sentencing so I'm going to continue him

16  on his present bond conditions.

17         MR. SALINAS:  And just one other thing, Judge, to

18  handle if the Court wants to.

19         May he be allowed to travel for work related

20  purposes only?

21         THE COURT:  You mean outside of the district or

22  outside of the county?

23         MR. SALINAS:  Outside of the district.  There's

24  some conventions that are coming up.  It just depends.

25         THE COURT:  Well, I don't know if they're going to

1   have the conventions --

2          MR. SALINAS:  Right.

3          THE COURT:  -- but if that's going to happen, all

4   he has to do is he can ask the Probation Officer.  And if

5   the Government does have any problem, the Court doesn't have

6   any problem if he travels outside the area for business

7   purposes or for any kind of family situation that needs to

8   occur.  He hasn't violated any condition of his bond

9   conditions.  We've had no issues whatsoever.  I don't think

10  we'll have any issues and so therefore I would have no

11  problem if -- and the Probation Office knows that I said he

12  can have those permissions if he asks for them and he gives

13  evidence that those meetings are going to happen.

14         MR. SALINAS:  Very well, Judge.  Thank you.

15         THE COURT:  If you all don't have anything else,

16  you all can be excused.

17         MR. LOPEZ:  Thank you, Your Honor.

18         DEFENDANT WADHWANI:  Thank you, Your Honor.

19      (Hearing adjourned at 4:22 p.m.)

20

21

22

23

24

25                      *  *  *  *  *

1          I certify that the foregoing is a correct

2   transcript to the best of my ability produced from the

3   electronic sound recording of the proceedings in the above-

4   entitled matter.

5   /S/ MARY D. HENRY

6   CERTIFIED BY THE AMERICAN ASSOCIATION OF

7   ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

8   JUDICIAL TRANSCRIBERS OF TEXAS, LLC

9   JTT TRANSCRIPT #62300

10  DATE FILED:  JUNE 24, 2020

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25